No. 19,244.

MORRIS MILLER *v.* L. C. FULENWIDER, INC.

(362 P. [2d] 570)

Decided May 29, 1961.   Rehearing denied June 26, 1961.

Mr. FRED M. WINNER, Mr. EDWIN P. VAN CISE, for plaintiff in error.

Messrs. DAWSON, NAGEL, SHERMAN AND HOWARD, Mr. RAYMOND J. TURNER, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

WE will refer to the parties by name or as they appeared in the trial court, where Miller was defendant in a suit by Fulenwider to recover a broker's commission. Trial was to the court upon the conclusion of which elaborate findings were made and judgment entered for the plaintiff in the sum of $75,000.00. The defendant is here by writ of error, seeking reversal.

By its complaint plaintiff alleged that on August 2, 1955, defendant Miller orally employed plaintiff to procure a purchaser for his stock in Miller's Super Markets, Inc., that pursuant to such agreement plaintiff was authorized to offer the Miller controlled stock for sale at a price fixed by Miller for cash, and if the stock were so sold to a purchaser produced by plaintiff, a commission of $75,000.00 would be paid by defendant. It was further alleged that a sale was consummated with a purchaser produced by plaintiff for the sum of six million dollars and that plaintiff was the procuring and efficient cause of the sale, having carried on extensive negotiations with the parties involved from the time the agreement was

entered into up to a few days before the sale. Defendant denied employment of plaintiff as alleged in the complaint and denied generally the other allegations thereof.

There was surprisingly little conflict in the testimony and the chief dispute here, as in the trial court, stems from two letters written by Miller to the plaintiff and which he claims constituted the entire agreement or contract between the parties.

The trial court in elaborate findings of fact found that the plaintiff was employed as broker to negotiate the sale of Miller's stock and that Miller had agreed to pay a commission of $75,000.00; that a sale was consummated to a purchaser produced by plaintiff, upon the terms and conditions prescribed by Miller, and that plaintiff has earned its commission; that the two letters identified in the record as Exhibits "P" and "EE" were nothing more than incidents of the listing agreement of the parties, furnished to plaintiff by Miller in order to confirm plaintiff's authority to negotiate a sale of the stock at the price and terms fixed. The letters referred to, omitting captions, are as follows:

Exhibit "P":

"Confirming our verbal understanding, and subject to prior sale, I agree to sell and deliver to you approximately 226,000 shares of Class B stock of Miller's Super Markets, Inc. at and for the price and consideration of $25.00 per share, and to sell and deliver to you approximately 39,000 shares of Class C stock of Miller's Super Markets, Inc. at and for the price and consideration of $20.00 per share. The Class B stock above mentioned is the only voting stock of said company and Class C stock is entitled to the same rights as Class B stock with the exception that it has no voting privilege.

"It is understood that I am to sell you and you are to purchase all of the Class B and Class C stock which I can obtain for you from the Miller family and from my employees, which will represent not less than 75% of the outstanding stock in each of said class, and that you

are to purchase at the prices above stated, if you exercise this option, all of said classes of stock, which I can deliver, with the exception that I am not to purchase any of said stock on the open market from persons other than those related to me or connected with Miller's Super Markets, Inc.

"I understand that you have an undisclosed principal who is contemplating purchasing the above stock through you and the above sale must be accepted and consummated by you within thirty days from the date hereof, subject to a prior sale, and if you do not accept and consummate said sale within said thirty day period, this agreement shall be null and void.

"There are 500,000 shares of preferred stock of $1.00 Par Value entitled to dividends at 5% of the Par Value per year, payable quarterly, which dividends are cumulative and which stock is callable upon reasonable notice, as more fully provided in the Certificate of Incorporation, and if the purchaser should desire to retire this preferred stock, he can do so by calling the same.

"It is further understood that if you consummate this sale hereof of the foregoing Class B and Class C stock that you are to receive a commission which shall, in no event, exceed the total of $75,000.00."

Exhibit "EE":

"On October 17, 1955, I wrote you a letter in which I offered to sell to you a certain amount of Class B and Class C stock of Miller's Super Markets, Inc., at and for the price in said letter set forth and upon the terms and conditions in said letter contained. The said letter expired because of your failure to exercise the option therein contained.

"You now inform me that you have prospective clients who are interested in purchasing all of the stock offered in said letter and you want me to revive the said letter and give your clients a chance to negotiate and act upon said letter on or before June 15, 1956.

"This is to inform you that I hereby revive my letter

of October 17, 1955, and extend the option period therein granted, to June 15, 1956. If your clients should manifest any interest on or before said date and should desire to enter into a contract affording them the right to purchase said stock after reasonable inspection and investigation, I will enter into such contract on or before June 15, 1956, providing a substantial deposit is paid and upon such terms as may be mutually agreed upon between your prospective purchasers and me.

"I guarantee that any and all information furnished your clients by Peat, Marwick & Mitchell, our accountants, will be found to be correct."

It is the contention of the defendant that the foregoing letters constitute the entire agreement between the plaintiff and defendant and that all previous oral agreements or negotiations were merged in the final form expressed by the letters; that, therefore, the admission of parol evidence of the listing agreement, the services of plaintiff pursuant thereto, and the transactions which followed tending to vary the terms expressed in the letters was error.

Concerning the effect of the letters, the findings of the trial court include the following:

"The Court concludes as a matter of law that said exhibits were not a contract or contracts, but only evidence of, and in explanation of, the oral contract under which plaintiff and defendant were operating. That the exhibits did not state the true termination date of the oral contract and did not contain or refer to all the terms of the contract and agreement between plaintiff and defendant, but were made and signed only for the purpose of delivering to the prospect and to satisfy the prospect that there was authority in the plaintiff to negotiate the sale with a firm offer to sell. That the exhibits being ambiguous, and for various other reasons attending said exhibits, parol evidence was admissible to show the full agreement, the relationship of plaintiff and defendant in the negotiations, and the overall picture of the actions of

each in this behalf. For which reasons the Court permitted oral testimony to explain the said oral contract."

■ From the evidence and from the findings of the trial court, with which we agree, the parol evidence rule has no application. The listing agreement established by the evidence not being in writing, the letters are subject to examination and explanation of their connection with the contract. Defendant was a witness and did not deny the commission he agreed to pay in the event of a sale was $75,000.00 — no more, no less. The letters on this point are ambiguous. Miller does not contend that the agreement between him and plaintiff contemplated giving the *plaintiff* an option to purchase the stock; it was well understood that plaintiff was in touch with a prospective purchaser to whom the option would be submitted. The evidence supports the court's finding that the letters do not represent the brokerage contract between the parties, but were furnished for the purpose of assuring plaintiff's prospect that the stock was available through plaintiff at the price stated.

The conduct of the parties clearly indicates that they did not intend, nor did they consider the letters or either of them, to represent the contract between them. The evidence is all one way that negotiations continued unabated after the thirty day option periods contained in the letters had expired. No one testified that the parties intended the letters to be other than an affirmation of Miller's willingness, and an expression of the terms upon which plaintiff was authorized, to sell. The findings of the trial court on this point accurately reflect the evidence:

"THE COURT FURTHER FINDS that at all times herein mentioned and particularly late in 1956, and at all times thereafter, one McNamara, president of the National Tea Company, and whose decision in the acquisition of property by his Company was required, knew of the foregoing agreement between plaintiff and defendant, and well knew of the efforts of the plaintiff to make

the sale herein, and had full knowledge and advantage of the data and information furnished by plaintiff to his Company, met clandestinely with the defendant Miller in Denver late in March, 1957, at which time a written agreement was made with Miller for the purchase of Miller's Supermarkets, Inc., including all stock and assets, by the National Tea Company, for the precise and exact amount 'to the penny' for cash, and under the same price, terms, and conditions that had been required by Miller from August 2, 1955, in his listing and agreement with the plaintiff. The sale and formal transfers of the corporate stock of Miller's Supermarkets, Inc. were made a few days later. All of this was without notice to or the knowledge of the plaintiff, who was still in close communication with both Miller and National Tea Company in order to finally close the sale of the said Miller's stock and assets aforesaid. The sale was caused to be made upon the basis of the information and data, the facts presented, and through the efforts of the plaintiff. That such secret meeting and the resulting sale in the manner aforesaid were had and made with the purpose and intent by the defendant to thwart and circumvent the efforts of the plaintiff, and to evade paying plaintiff the $75,000.00 agreed commission."

In urging that parol evidence was not admissible under the circumstances here, defendant overlooks the true rule applicable to the situation disclosed by this record. True, when a contract has been expressed in writing, to which both parties have assented as a complete and accurate expression of their agreement, evidence, whether parol or otherwise, of antecedent understandings and negotiations is not admissible for the purpose of varying or contradicting the terms of the writing. But where, as here, the issue is whether the parties have made a contract, and whether such contract is expressed in a particular writing and, if so, whether the writing has been assented to as the complete and accurate expression of their agreement, any evidence tending

to explain or clarify the intent and purpose of the parties is admissible. See 3 Corbin on Contracts (1960 ed.), section 573, page 357, et seq.; *Witherspoon, et al. v. Pusch,* 141 Colo. 525, 349 P. (2d) 137.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE MCWILLIAMS concur.