This is an appeal from a judgment entered by the Common Pleas Court of Adams County, Ohio, confirming a Sheriff's sale and ordering distribution of proceeds following foreclosure of a mortgage on real property owned by Kay A. Matthews (hereinafter referred to as "Ms. Matthews") defendant below and appellant herein. Ms. Matthews assigns the following errors for our review:
 I. "A previous bankruptcy action did not bar Kay Matthews from asserting counterclaims defensively in a state foreclosure action."
 II. Appellee was not entitled to summary judgment for foreclosure because as a matter of law its lien was a nullity.
 III. The trial court erred in granting summary judgment to appellee because Kay Matthews' counterclaims concerning violations of the Retail Installment Sales Act and the Consumer Sales Practices Act and breach of contract were never adjudicated.
Another lien holder, William C. Games, d/b/a Games Insurance Agency (hereinafter referred to as "Games Ins."), defendant below and appellant herein posits additional assignments of error as follows:
 I. "The trial court erred in granting Appellee Parker Financial's claim with having priority over Appellant Games' claim when a question of material fact was raised."
 II. The trial court abused its discretion by failing to conduct an evidentiary hearing to resolve a question of material fact[.]"
The record reveals the following facts pertinent to this appeal. On January 9, 1988, Ms. Matthews entered into a contract with Quality Builders, Inc. (hereinafter referred to as "Quality Builders") for the installation of vinyl siding on her home in Peebles, Adams County, Ohio. She executed a promissory note in the principal amount of $26,731.80 to finance this project and conveyed a mortgage interest in the premises to Quality Builders as security thereon.[1] This note and mortgage were, subsequently, assigned to various parties and were eventually acquired by appellee. It would appear that Ms. Matthews was dissatisfied with the work that was performed by Quality Builders as she has described their workmanship as "shoddy" and the materials used by them as "inadequate."
In any event, on September 11, 1995, appellee commenced the action below alleging that she was in default of payment and demanding foreclosure of its security interest. Several lien holders in the premises were also joined as parties to the action and appellee requested that their interests be marshalled and their priority determined for purposes of distributing proceeds from any Sheriff's sale of the property. One of those lien holders, Games Ins., filed an answer asserting a judgment lien against Ms. Matthews in the amount of $6,634.00 and, further, asserting that this interest was "superior to all lienholders except the real estate taxes and assessments."
Ms. Matthews failed to make an initial appearance in this matter and so, on December 22, 1995, a default judgment was entered against her foreclosing the mortgage and ordering the property sold at public auction. Five (5) days before the scheduled Sheriff's sale, however, she filed a Civ.R. 60(B) motion for relief from judgment. In an accompanying affidavit, Ms. Matthews attested that she "did not ever receive the court mailings that should have informed [her] of this litigation" and only learned of these proceedings after a friend mentioned reading the Sheriff's sale advertisement in the newspaper. She also asserted that she was "terminally ill," with various ailments including "farmer's disease" and "chronic depression," and was taking several different medications. The lower court granted Ms. Matthews relief from judgment thereby cancelling the impending Sheriff's sale of her property. On April 23, 1996, she filed an answer denying any liability to appellee on the note and mortgage asserting (as an affirmative defense) that she had been discharged from the indebtedness during a prior bankruptcy. She also counterclaimed alleging that there had been a breach in the original home improvement contract and that Quality Builders had violated both the Consumer Sales Practices Act (hereinafter referred to as "CSPA") and the Retail Installment Sales Act (hereinafter referred to as "RISA") in the manner by which they had solicited, and later consummated, the transaction. Ms. Matthews requested,inter alia, that the contract and promissory note be cancelled, that the mortgage be declared unenforceable, that she be awarded restitution of all previous payments she had made thereon and that she be awarded $21,000 in damages which award should then be trebled pursuant to statute. Appellee filed an answer denying her allegations and asserting, among other things, that her claims were barred by the statute of limitations as well as the doctrine of laches.
On December 9, 1996, Ms. Matthews filed a motion for partial summary judgment arguing that there was no genuine issue of material fact with respect to her affirmative defense (discharge in bankruptcy) and her second counterclaim (violation of RISA) and that she was entitled to judgment in her favor on these points as a matter of law. Copies of various documents were attached as supporting exhibits to this motion and, among them, was a petition in bankruptcy, listing appellee as a creditor, and an entry dated July 13, 1993, discharging her from all dischargeable debts. This discharge, she asserted, relieved her of the underlying debt she incurred for installation of the siding thereby leaving appellee (the assignee of that debt) to foreclosure of its security as the only avenue of recourse for collection. She continued, however, that the security interest itself was invalid because it purported to give a mortgage interest in real property to secure payment on the sale of goods (i.e. the siding) which is not permitted under RISA. Thus, Ms. Matthews concluded, the mortgage was also invalid and summary judgment should be granted in her favor. Appellee countered, in a memorandum contra, that while RISA may not ordinarily allow for a security interest to be taken in real property to secure payment for the sale of goods, such a mortgage is permissible under R.C.1317.071 when the goods are "installed" or "annexed" to the property so mortgaged. It was argued that vinyl siding, by its very nature, is "installed" on the property and, thus, appellee concluded that its security interest was valid.
The lower court initially overruled Ms. Matthew's motion in its entirety but, later, entered a second judgment sustaining her request for summary judgment insofar as the affirmative defense of discharge in bankruptcy. It was therefore determined that she was "not obligated to pay the note held by the [appellee]." As to the validity of the security interest, however, the lower court reiterated its position that her motion was overruled.
On March 21, 1997, appellee filed its own motion for summary judgment arguing that there was no genuine issue of material fact and that it was entitled to foreclosure of its mortgage as a matter of law. An affidavit of one of its employees was attached as an exhibit in support of the motion and set forth that the loan was in default and that no payments had been received since the account was acquired several years earlier. Appellee also raised the same argument it had made in its memorandum contra Ms. Matthews motion for summary judgment and asserted that the mortgage was a valid security interest under RISA. Given that validity, as well as the default in payment, appellee concluded that it was entitled to have the mortgage foreclosed and the property sold at Sheriff's sale. Games Ins. also filed a motion for summary judgment arguing that it was entitled to foreclosure of its judgment lien on the premises. Further, it was asserted that such lien was superior in priority to the mortgage interest held by appellee. The basis for this argument was that the mortgage originally given to Quality Builders did not specify the marital status of the mortgagor (Ms. Matthews) or provide for a signature from her spouse. Thus, it was concluded, that the mortgage "[wa]s defective, it loses its priority status . . . and the lien of [Games Ins.] acquires priority" over the mortgage.
Ms. Matthews never opposed the request for summary judgment by her judgment lien creditor (Games Ins.) but did file a memorandum contra to appellee's motion wherein she repeated her argument that the mortgage was invalid under RISA. Challenge was also made to the arrearages asserted by appellee. Ms. Matthews cited back to her affidavit the year before (supporting her motion for relief from judgment) in which she described the work of Quality Builders as "shoddy." Because of such workmanship, she reasoned, there was no debt to either Quality Builders or to appellee as its assignee.
A decision was rendered by the trial court on April 16, 1997, granting summary judgment in favor of Games Ins. The court noted that Ms. Matthews had never disputed this claim either as to the amount of the debt or in the sense that it was a valid lien against the property. It was noted that the underlying judgment against her had never been paid and the lower court determined that the lien creditor was entitled to have its lien foreclosed and the property sold at Sheriffs sale. Having so ruled in favor of Games Ins., the trial court found it unnecessary at that time to address the issue of whether appellee had a valid security interest. The property was simply ordered to be sold with proceeds (after payment of taxes) to be held by the Sheriff until such time as the priority of claims could be properly determined. Judgment to that affect was entered several weeks later and, on June 23, 1997, the property was sold at Sheriff's sale for $25,000.
Each of the parties subsequently filed memoranda addressing how those proceeds should be distributed. Games Ins. conceded in its brief that it had discovered Ms. Matthews was unmarried at the time the mortgage was executed. Appellant thus did not pursue this particular challenge to the instrument's validity. However, a new challenge was raised and it was asserted that the mortgage was invalid because it was not executed before two (2) witnesses and a notary public as required by statute. An affidavit by Arthur M. Richard, III (counsel for Games Ins.), was attached to the memorandum in support thereof. Mr. Richard attested that he had contacted Ms. Matthews, to inquire of her marital status at the time the mortgage had been executed, and she had revealed to him that she had signed the instrument in front of only one (1) salesman for Quality Builders and that a notary was not present. Games Ins. concluded that this was proof of the mortgage's invalidity and justified a finding that its judgment lien was the superior encumbrance on the property. Further, proceeds from the Sheriff's sale should be distributed to pay off that lien first and then the remainder should be remitted to the home owner. Ms. Matthews took a similar position in her own memorandum. She agreed that Games Ins. had "first priority to the distribution of proceeds" and went on to argue that appellee should not share in them at all due to the discharge of her original debt in bankruptcy and the fact that it "never had a cognizable lien" on her property. Thus, after payoff of the judgment to Games Ins., the balance of the proceeds should be paid to her in compensation for her equity interest in the premises. Ms. Matthews further urged the court to proceed to trial on the merits of her counterclaim(s). Appellee filed two (2) separate memoranda addressing the position of each appellant. First, with respect to Games Ins., appellee argued that the mortgage, was properly witnessed and notarized on its face. No competent evidence, appellee continued, was introduced to refute that appearance of propriety. The only material which had been submitted to challenge it was "an incredibly self-serving affidavit" which did not even come from Ms. Matthews herself but, rather, contained hearsay statements attributable to her which were then repeated by a third party. Appellee concluded that Games Ins. had simply "concoct[ed] some scenario" which was "clearly groundless" and that the mortgage was perfectly valid. With respect to the arguments advanced by Ms. Matthews, appellee conceded that her underlying debt had been discharged in bankruptcy. That discharge, however, did not negate the operative effect of the original mortgage. Appellee concluded that, while it could not collect on any arrearages, it was entitled to the foreclosure of its security. As to the issue of whether RISA had been violated by taking a mortgage interest in real property to secure payment on the sale of goods, appellee asserted that this was a matter which should have been raised by Ms. Matthews during her bankruptcy proceeding. Her failure to do so, appellee concluded, amounted to a waiver of the issue thus preventing her from raising it below. Appellee concluded that its mortgage was not only valid but also the superior lien on the property and that it had first priority to distribution of proceeds after payment of court costs and taxes.
The lower court agreed. It was noted at the outset that neither Ms. Matthews nor Games Ins. had submitted any competent Civ.R. 56(C) materials to challenge appellee's mortgage interest.[2] The affidavit of Mr. Richard (repeating what Ms. Matthews had supposedly told him about the mortgage not being executed in front of two (2) witnesses and a notary) was rejected outright because it "did not take the place" of the requisite attestations to that affect from the mortgagor. Appellee's interest was thus determined to be valid and superior to that of the judgment lien creditor. With respect to Ms. Matthews's arguments, that the mortgage was invalid under RISA, the court noted that this debt had been listed by her in her previous bankruptcy as "undisputed" and she had also represented to the federal bankruptcy court that "she had no outstanding claims against any persons or entities." These representations, the court noted, had been "sworn to by" her during those proceedings. Thus, while the court did not actually employ the term "waiver," it essentially found that Ms. Matthews had waived her right to challenge the mortgage under RISA. The court therefore concluded that there was no genuine issue of material fact and that appellee was entitled to judgment as a matter of law declaring its mortgage interest as a valid first lien on the premises. A confirmation entry was then filed on November 24, 1997, ordering $20,829.39 of the Sheriff's sale proceeds to be paid to appellee in satisfaction of its mortgage.[3] This appeal followed.
We shall first address the arguments raised by Games Ins. in its two (2) assignments of error which will be considered together. Appellant contends on appeal, as it did below, that the mortgage given by Ms. Matthews to Quality Builders was improperly executed and, therefore, appellee does not hold a valid lien in the premises. Our analysis of this contention begins with R.C. 5301.01 which states inter alia that a mortgage must be executed by a mortgagor in the presence of two (2) witnesses, who will attest to the signing and subscribe their names to the attestation, and a notary public who will likewise subscribe his or her name to a certificate of acknowledgment. A failure to comply with these statutory prerequisites renders a mortgage invalid insofar as any subsequent lienholder in the premises. See generally Amick v.Woodworth (1898), 58 Ohio St. 86 at paragraph two of the syllabus; Barry v. Hovey (1876), 30 Ohio St. 344, 347; Strangv. Beach (1860), 11 Ohio St. 283, 388. The initial argument posited by Games Ins. below was that the mortgage from Ms. Matthews was invalid because the granting clause did not specify her marital status and the bottom of the instrument did not provide for the signature of a spouse. It was later determined that Ms. Matthews was unmarried at the time the mortgage was executed and this argument was abandoned. The second argument posited by Games Ins. below, and the position which it has now taken on appeal, is that the mortgage is invalid because it was not executed in front of two (2) witnesses and acknowledged by a notary. Appellant asserts that this was fatally defective to the validity of the instrument and that the lower court erred in finding that its judgment lien had second priority behind the mortgage to appellee. We disagree.
This Court does not dispute appellant's interpretation of the law but, rather, base our ruling on the procedural deficiencies in the manner by which this issue was raised below. It should be noted at the outset that the priority status of the various liens were determined on summary judgment. Our review of the lower court's decision is therefore conducted under ade novo standard. Snell v. Salem Ave. Assoc. (1996), 111 Ohio App.3d 23,30; Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38,41; Doner v. Snapp (1994), 98 Ohio App.3d 597, 600. That is to say that we afford no deference whatsoever to the trial court's decision, Doe v. Adkins (1996), 110 Ohio App.3d 427,432; Murray v. Bank One (1994), 99 Ohio App.3d 89, 97; Dillon v.Med. Ctr. Hosp. (1993), 98 Ohio App.3d 510, 514-515, and conduct our own independent review to determine if summary judgment was appropriate. Phillips v. Rayburn (1996), 113 Ohio App.3d 374,377; Schwartze v. Bank One, Portsmouth, N.A.
(1992), 84 Ohio App.3d 806, 809; Howard v. Wills (1991),77 Ohio App.3d 133, 139. Summary Judgment is appropriate under Civ.R. 56(C) when the movant demonstrates (1) that there is no genuine issue as to any material fact, (2) that it is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party, said party being entitled to have the evidence construed most strongly in its favor. Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385; Bostic v. Connor
(1988), 37 Ohio St.3d 144, 146; Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. The party moving for summary judgment in its favor is the one who bears the initial burden of showing that there exist no genuine issue of material fact and that it is entitled to judgment as a matter of law. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429; Dresherv. Burt (1996), 75 Ohio St.3d 280, 293; Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 115. If the movant carries that burden, then the onus shifts to the opposing party to show that genuine issues of fact do exist. See Trout v. Parker (1991),72 Ohio App.3d 720, 723; Campco Distributors, Inc. v. Fries
(1987), 42 Ohio App.3d 200, 201; Whiteleather v. Yosowitz
(1983), 10 Ohio App.3d 272, 275. With this procedure in mind, we turn our attention to the motions and accompanying evidentiary materials introduced below.
Appellee asserted in its motion that it had the superior lien on the property of Ms. Matthews. The affidavit of James E. Chalfant, an officer of Parker Financial, Inc., was attached as a supporting exhibit to that motion. Mr. Chalfant attested in paragraph three (3) of his affidavit that the mortgage attached to appellee's complaint was a true and accurate copy of the original instrument. Even a cursory review of that document reveals the signature of two (2) witnesses, stating that the mortgage was signed in their presence, as well as the acknowledgment of a notary public. This was sufficient for appellee to carry its initial burden of demonstrating that the instrument was properly executed and, thus, valid. The burden then shifted to Games Ins. to adduce evidentiary materials to the contrary and we agree with the lower court that appellant failed to carry that burden below.
The only material submitted by Games Ins. in support of its position (that the mortgage had not been executed before two (2) witnesses and a notary) was the affidavit of Mr. Richard. That affidavit was not based on the affiant's personal knowledge but, instead, repeated what Ms. Matthews had told him during a phone conversation. This was wholly inadequate. The provisions of Civ.R. 56(E) expressly state that affidavits submitted in support of a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Emphasis added.) It is well settled law that hearsay statements cannot be considered under this rule. See e.g.Brannon v. Rinzler (1991), 77 Ohio App.3d 749, 756; also seeFox v. Daly (Sep. 26, 1997), Trumbull App. No. 96-T-5453, unreported; Sweatman v. Yellow Freight Sys. (Aug. 29, 1996), Franklin App. No. 96APE03-329, unreported; Heritage Bank, Inc.v. Barclay (Apr. 24, 1996), Hamilton App. No. C-950476, unreported; Papadelis v. Cleveland (Apr. 4, 1996), Cuyahoga App. No. 69254, unreported. Mr. Richard's affidavit could not properly be considered on summary judgment and, thus, the lower court correctly found that Games Ins. had failed to carry its burden of rebuttal to show that the mortgage was defectively executed. It logically follows that, if no genuine issue of material fact was demonstrated with respect to the mortgage's validity, then appellant was also not entitled to a hearing on the matter. We therefore find no merit to the arguments advanced in either of its assignments of error.
Games Ins. counterargues, in its reply brief, that proper Civ.R. 56(C) evidentiary materials could not be proffered in support of its position because "[t]here was not enough time to depose [Ms. Matthews] from the time the newly discovered evidence was obtained" and because she "was an adverse party to this [a]ppellant." We are not persuaded on either count. First, this action had been pending for nearly two (2) years by the time appellant "discovered" this "new evidence." Mr. Richard admits in his affidavit that it took only a phone call to make this "discovery" which leads us to conclude that a little more diligence early on these proceedings would have yielded the same result and allowed appellant sufficient time to depose the mortgagor. Further, while Ms. Matthews is technically an adverse party to Games Ins., she sided with appellant in her memorandum addressing lien priority and agreed that her judgment creditor had the superior interest to proceeds from the Sheriff's sale. She also did not oppose the motion for summary judgment which had been filed against her by the judgment lien creditor. We would further point out that it was to Ms. Matthews's benefit to establish that appellee's mortgage lien was invalid as this would allow her to collect whatever proceeds were left after payment of taxes, costs and the judgment lien. Thus, she should have had no objection to providing her own affidavit in place of the one by Mr. Richard. There was simply no reason why proper Civ.R. 56(C) evidentiary materials could not have been submitted to rebut the appearance that the mortgage was validly executed. The lower court correctly determined that there was nothing to refute the apparent validity of the mortgage and that it was a superior lien to that of the certificate of judgment. For all these reasons, the two (2) errors assigned by Games Ins. are without merit and are overruled.
We now return to the errors assigned by Ms. Matthews. It should be noted at the outset that appellee's motion for summary judgment, and the supporting affidavit filed therewith, set forth both that the note and mortgage were true and valid copies of the originals and that Ms. Matthews was in default of payment. This was sufficient to carry the initial burden of showing that appellee was entitled to foreclosure. The burden then shifted to Ms. Matthews who did not really contest the factual issue of default but, instead, argued that appellee's security interest was defective and that it was not entitled to any relief as a matter of law. With this in mind, we turn to her first assignment of error. Ms. Matthews argues therein that the lower court erred in holding that she was barred from raising the issue of the mortgage's validity under RISA because that issue had not been asserted during her previous bankruptcy. We disagree. It is worth repeating at this point that the lower court never identified the precise legal theory by which it reached this conclusion. It was simply noted that Ms. Matthews had never disputed the mortgage during her bankruptcy and never indicated that she had any outstanding claims against any person(s) or entities. The court went on to conclude that there were no genuine issues of material fact and that appellee was entitled to judgment in its favor as a matter of law. Ms. Matthews premises her argument against that conclusion on the basis that the trial court employed ares judicata theory. However, from our reading of the court's decision, we believe that a waiver theory was employed instead. "Waiver" is the voluntary relinquishment of a right or the doing of acts inconsistent with an assertion of that right.Goff v. Walters (Oct. 28, 1998), Summit App. No. 18961, unreported; Sturm v. Sturm (Jun. 22, 1988), Summit App. No. 13309, unreported. The trial court appears to suggest that Ms. Matthews had the opportunity to challenge the validity of the mortgage on the basis of RISA but chose not to avail herself of that option and is now bound by her decision. This would seem to indicate that she was found to have waived the issue rather than being prohibited from raising it under the guise of resjudicata.
Having determined that a waiver theory was used in ruling against Ms. Matthews, we must now address the question of whether such a theory was appropriate under the circumstances of this case. We answer that question in the affirmative for the following reasons. The provisions of Section 502(b)(1), Title 11, U.S. Code, provide inter alia that claims of creditors shall be allowed unless such claims are unenforceable against the debtor (and property of the debtor) under any applicable law. It is therefore the general rule that, to the extent state law provides a debtor with a defense to a claim assertable outside of bankruptcy, the defense is available to the debtor in objecting to a creditor's claim during bankruptcy. See e.g., In re Rhead (D.Ariz. 1995), 179 B.R. 169,173; In re Beverages International, Ltd. (D.Mass. 1985),50 B.R. 273, 279; In re Nuisance Corp. (D.N.J. 1981), 17 B.R. 80,82. In other words, substantive state law is applied to determine the validity of a creditor's claim. In re FrontierAirlines, Inc. (D.Col. 1988), 88 B.R. 332, 335; In re Jones
(C.D.Cal. 1987), 72 B.R. 25, 26; In re Fantastik, Inc. (D.Nev. 1985), 49 B.R. 510, 512-513. Ms. Matthews clearly had the right to challenge appellee's mortgage as being in violation of RISA during her bankruptcy proceeding. However, she did not avail herself of that right and can clearly be deemed to have waived it. It would also appear from the record that, by waiving her right during bankruptcy and attempting to assert it now, during a subsequent state foreclosure proceeding, she has prejudiced the rights of appellee.
The schedules she filed as part of her voluntary petition lists the subject property and gives it a value of $36,000.00. She also set forth the secured interests of appellee (in the amount of $21,254.74) and Games Ins. (in the amount of $6,634.00).[4] Finally, Ms. Matthews also claimed a statutory $10,000.00 exemption from creditors in the equity of her homestead. Simple arithmetic reveals that the combined amount of the secured interests and her statutory exemption ($37,888.74) exceeded the value of the property ($36,000.00) and, thus, there was no equity therein available to the chapter 7 trustee for distribution to unsecured creditors. Had Ms. Matthews challenged the validity of the mortgage, and had she been successful in that endeavor, such action would have freed over $19,000.00 for distribution to unsecured creditors (which would have included appellee given that its security had been invalidated). The decision by Ms. Matthews to forego a challenge to the mortgage left appellee to the foreclosure of its security as the only means of collection and deprived it of any opportunity to recover for unsecured debt.[5] We therefore rule that the lower court's conclusion, that Ms. Matthews had waived her right to challenge the validity of the mortgage by not doing so during bankruptcy, was entirely appropriate under these circumstances.
Ms. Matthews offers several additional arguments against the application of a waiver theory in this context. First, she asserts that Associate Financial Services (appellee's predecessor in interest and assignor of the mortgage) "took no action in the bankruptcy against the secured property" and appellee should be bound by such inaction. This is clearly without merit. Common sense alone dictates that a creditor should not be expected to both challenge and defend the validity of the claim it asserts. Rather, the burden should be on the debtor to challenge the validity of the debt.See 3 Collier on Bankruptcy (1996), 502-18 at fn. 19, ¶ 502.01[3] (stating that a properly presented claim is primafacia valid and can be overcome by an objecting party only if he or she offers probative evidence in rebuttal). Ms. Matthews cites us to no authority of law, and we have found none in our own research, which would indicate to the contrary. Her second argument is that "waiver" is an affirmative defense which, because appellee did not expressly plead it below, was itself waived. This has considerably more merit than her last argument and deserves a more in depth analysis.
It is true that "waiver" is an affirmative defense under Civ.R. 8(C) and should have been affirmatively pled. Ms. Matthews is also correct that appellee did not plead the defense in its reply to her answer and counterclaim. Ordinarily, the failure to plead an affirmative defense results in the waiver of that defense. See Spence v. Liberty Twp.Trustees (1996), 109 Ohio App.3d 357, 362; Mossa v. W. CreditUnion, Inc. (1992), 84 Ohio App.3d 177, 180-181. This Court, however, has refused to apply these principles in a wooden and mechanical fashion. Recently, in Pine Creek Farms v. HersheyEquipment Co., Inc. (Jul. 7, 1997), Scioto App. No. 96CA2458, unreported, we faced an analogous situation and held that a trial court could properly consider an affirmative defense that was raised for the first time in a motion for summary judgment. We stated as follows:
 "The first time [appellee] expressly raised the affirmative defense of the statute of limitations was in its motion for summary judgment. Despite [appellee's] failure to previously raise this defense pursuant to Civ.R. 8(C) . . . [appellant] did not argue that [appellee's] prior failures constituted a waiver of its right to assert this affirmative defense. Thus, the trial court proceeded on the merits of the appellees' motions for summary judgment and later ruled that [appellant's] claim against [appellee] was barred by the statute of limitations.
 Although we recognize the general rule [that a failure to plead an affirmative defense amounts to its waiver], appellant had ample notice prior to the filing of [appellee's] motion for summary judgment that the statute of limitations was a possible defense; therefore, appellant was not prejudiced by [appellee's] delay in raising the defense. Second, appellant's failure to raise the waiver issue in its memorandum contra constitutes its implied consent for the trial court to rule on the applicability of [appellee's] defense. See, by way analogy, Civ.R. 15(B) * * * Furthermore, appellant's failure to raise the waiver issue also prevented [appellee] from seeking leave from the trial court to amend its answer pursuant to Civ.R. 15(A) which provides that leave of court to amend a pleading 'shall be freely given when justice so requires.' Finally, appellant cannot raise an issue for the first time on appeal.
 Under these facts, we hold the trial court did not err by considering this affirmative defense as it applied to [appellee]." (Citations partially omitted).
It is unclear from the record how the issue of waiver (as it applies to Ms. Matthews) was first raised in the causesub judice. In her materials filed below, she suggests that the issue was initially raised by the trial court. This may be true. We note a January 21, 1997, letter from the court to Ms. Matthews's counsel, in response to a motion for a "Civ.R. 56(D)" statement of disputed facts, requesting that she submit copies of additional bankruptcy schedules for review. The court's request to view these materials may well have laid the ground work for an argument that she waived her right to challenge the mortgage. However, from our own review of the original papers in this case, the issue of waiver appears to have been first advanced by appellee in its March 21, 1997, motion for summary judgment. It was argued therein that Ms. Matthews, "in her bankruptcy filing, listed [appellee's] assignor, Associates Financial Services, as a secured creditor in the bankruptcy and never once disputed the validity of that claim." Appellee continued that '[t]his failure to raise any issue as to the validity of [its] mortgage in the bankruptcy should act as a bar to . . . raising that issue" below. The same argument was made by appellee in a trial memorandum filed three (3) days later. Ms. Matthews filed a memorandum contra summary judgment wherein she argued against application of a waiver theory on its merits but did not charge appellee with failure to timely raise this issue in its reply pursuant to Civ.R. 8(C). She also failed to make that argument in her October 6, 1997, memorandum addressing the priority by which proceeds of the Sheriff's sale should be distributed. It was simply stated therein that appellee had "no legal support for the proposition" that she had waived her right to challenge the mortgage under RISA.
The procedural posture of this case is remarkably similar to that in the Pine Creek Farms case noted above. Appellee raised the issue of waiver for the first time in its motion for summary judgment. This was long before the trial court gave a definitive ruling on the matter and Ms. Matthews was well aware that it was being considered. Indeed, she even argued the issue several times herself on its merits. Not once, however, did she counter that appellee had waived its right to raise that defense under Civ.R. 8(C). Had she done so, appellee could have moved the court below for leave to amend its answer and include the defense of waiver. Ms. Matthews was clearly not prejudiced by the failure of appellee to raise this issue in its reply to her answer and counterclaim and, by arguing the point on its merits, essentially agreed that the matter could be considered by the trial court. Thus, as in Pine Creek Farms, we decline to apply a strict application of the principles requiring that affirmative defenses be expressly pled. It follows that there was no error in the trial court considering this issue once it was raised by appellee. For all these reasons, Ms. Matthews has not persuaded us that there was any error in the court's conclusion that she had waived her right to challenge the mortgage under RISA when she failed to raise that issue during the proceedings in bankruptcy. Her first assignment of error is, accordingly, overruled.
We now turn to the second assignment of error wherein Ms. Matthews argues that, even if she had waived her right to challenge the mortgage, it was still error to grant judgment in favor of appellee because the security interest was voidab initio and thus unenforceable. This argument actually presents two (2) separate issues for us to resolve. The first is whether the mortgage/security interest violated the provisions of RISA set forth in R.C. chapter 1317. If the answer to that question is in the affirmative, we must then determine whether such violation renders the security interest unenforceable. Our analysis of these issues is set forth below. Before addressing them, however, we would point out that there has never been any question between the parties that RISA applies to this case. Both sides essentially agree that the contract for installation of vinyl siding to Ms. Matthews's home was a "retail installment sale" as defined in R.C.1317.01(A) and that the mortgage is a "retail installment contract" as defined by R.C. 1317.01(L). The record is also clear that the contract at issue here was between Ms. Matthews and Quality Builders who was a "retail seller" as defined by R.C. 1317.01(I). It was not a situation where the note and mortgage were given by her to a separate banking institution which merely financed the home improvement project.[6]
With this in mind, we turn our attention to the issue of whether the mortgage violated the provisions of RISA. The answer to this question can be found in R.C. 1317.071 which provides, inter alia, as follows:
 "No retail seller, in connection with a retail installment contract arising out of a consumer transaction, shall take any security interest other than as authorized by this section.
 A seller may take a security interest in the property sold, and in goods upon which services are performed or in which goods sold are installed or to which they are annexed."
This portion of the statute clearly states that a security interest can only be taken (1) in the property sold (vinyl siding in this case) or (2) in "goods" upon which either services are performed, or in which "goods" sold are installed or to which they are annexed. Appellee's mortgage is clearly not permissible under the first option because the mortgage was given in the entire property and not just the siding. It is nevertheless the position of appellee that its security interest is valid under the second option because the vinyl siding was "installed" or "annexed" to the real property. We disagree. As Ms. Matthews correctly points out in her brief, installation or annexation of the vinyl siding would make appellee's security interest valid only if the real estate to which it was attached constituted "goods" for purposes of this chapter. "Goods" are defined by R.C. 1317.01(C) as "all things" which are both (1) movable at the time of identification and (2) are purchased primarily for personal, family or household purposes. While there is little doubt that Ms. Matthews purchased her home for personal or family purposes, the real estate was obviously not "movable" at the time the retail installment contract was entered. It is therefore clear that her home did not constitute "goods" for purposes of R.C.1317.01(C) and that the sort of security interest taken by Quality Builders was not permitted under R.C. 1317.071(C).
Having said that, however, we are not persuaded that the prohibited mortgage was unenforceable. Ms. Matthews relies on the provisions of R.C. 1317.08 which state, in pertinent part, as follows:
 "No retail installment contract which evidences an indebtedness greater than that allowed by section 1317.06 or 1317.07 of the Revised Code and no retail installment contract in connection with which any charge prohibited by sections 1317.01 to 1317.11, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer, or any other person who as surety, indorser, guarantor, or otherwise is liable on the obligation created by any retail buyer on any retail installment contract, and no security interest created by any such retail installment contract which is greater than that allowed by sections 1317.06 and 1317.07, inclusive, of the Revised Code, has been contracted for or received shall be enforceable against any retail buyer or any of the aforementioned persons, in default under the terms of the retail installment contract." (Emphasis added.)
This statute sets out in detail when a retail installment contract, or security interest taken therewith, is unenforceable. Any retail installment contract which includes amounts greater than those allowed under R.C. 1317.06 or R.C.1317.07 are unenforceable. The same is true with respect to any such contract which contains charges prohibited by R.C. 1317.01
through R.C. 1317.11. As for security interests, they are unenforceable if in excess of that which is allowed by R.C.1317.06 and R.C. 1317.07. See R.C. 1317.08; also see Elsea,Inc. v. Stapleton (Jul. 2, 1998), Lawrence App. No. 97CA45, unreported (stating that if a retail seller contracted for a prohibited charge then neither the contract nor the security interest connected to it is enforceable). Noticeably absent from the statute, however, is any mention that a security interest is unenforceable if it violates the aforementioned provisions of R.C. 1317.071. The General Assembly could easily have included reference to that provision in R.C. 1317.08 but, for one reason or another, did not do so and we decline to insert such a reference by judicial fiat. Thus, there is no direct statutory authority for holding that appellee's mortgage is unenforceable.
As further authority for her position, Ms. Matthews cites us to our previous decision in Glouster Community Bank v. Winchell
(1995), 103 Ohio App.3d 256 wherein this Court stated that "R.C. 1317.08 explicitly states that neither the retail installment contract nor the security interest created by the retail installment contract are enforceable against the buyer if the seller has violated RISA." Id. at 264. The implicit argument which she seems to make here is that this Court has already taken the position that any violation of RISA will render a security interest unenforceable. This is too broad a reading of that case. At issue in Glouster Community Bank, was a provision in the retail installment contract which provided for payment of attorney fees and court costs upon default. A majority of this Court concluded that such provision was a prohibited charge under RISA and rendered both the contract and the security interest unenforceable. That case is clearly distinguishable from the cause sub judice because the prohibited charge was in violation of R.C. 1317.07 which is specifically referenced by the above cited portion of R.C.1317.08. There is, however, no such prohibited charge at issue in this case. Ms. Matthews's challenge to the enforceability of the mortgage is based solely on the fact that it encompasses too much secured property. She has not claimed that it evidences too much indebtedness or contains too many charges.
It is worth repeating that, as mentioned above, there is no direct statutory authority for holding that the mortgage at issue in this case was void ab initio and thereby unenforceable. Further, this Court's decision in GlousterCommunity Bank, supra, should not be interpreted any broader than the facts of that case and is not authority for such a proposition. It is well settled law that courts should apply statutes as written and not insert words or provisions therein which were not included by the General Assembly. See generallyCline v. Ohio Bur. of Motor Vehicles (1991), 61 Ohio St.3d 93,97; State, ex rel. General Elec. Supply Co. v. Jordano Elec.Co. (1990), 53 Ohio St.3d 66, 71; State, ex rel. Sears, Roebuck Co. v. Indus. Comm. (1990), 52 Ohio St.3d 144, 148. Given that R.C. 1317.08 does not expressly state that a security interest is unenforceable if it violates R.C. 1317.071, we decline to hold that appellee's mortgage could not be enforced below. The second assignment of error is, accordingly, overruled.
Ms. Matthews argues in her third assignment of error that it was improper to grant full summary judgment to appellee on the entirety of her various counterclaims because those matters were never fully developed during the proceedings below. On this point, we agree. Ms. Matthews asserted three (3) separate claims against appellee including breach of contract as well as violation of both RISA and CSPA. She further asserted that both federal and state consumer protection laws, as well as basic contract law, allowed her to maintain those claims against appellee even though it was the assignee of the original seller (i.e. Quality Builders). Finally, she asked for a variety of relief including cancellation of the contract and security interest (as well as a declaration that they were void and unenforceable) together with $21,000 in damages and a request that such damages be trebled pursuant to statute. Her demands for relief with respect to enforceability of the note and mortgage are, obviously, no longer viable given our decision herein overruling her first and second assignments of error. However, this still leaves intact the claims for damages.
Appellee's motion for summary judgment addressed only the validity and enforceability of the mortgage and set forth that Ms. Matthews was in default of payment. It did not address her claims for violation of CSPA and breach of contract nor did it reach her demand for damages under either of those claims or her claim for violation of RISA. There was also nothing in the motion or supporting affidavit which had any bearing on appellee's affirmative defenses to these matters. We therefore conclude that it did not carry its initial burden under Civ.R. 56(C) with respect to the counterclaims. See e.g. Vahila, supra
at 429; Dresher, supra at 293; Mitseff, supra at 115. Thus, it was error to grant summary judgment to appellee to this extent. Although not entirely clear from the entry below, it would appear that the trial court concluded that Ms. Matthews also waived these claims by not asserting them during her bankruptcy proceeding. This Court declines to apply a waiver theory in this context, however, because these portions of her counterclaims do not go to the enforceability of the mortgage given to Quality Builders and there is no apparent prejudice to appellee from her failure to assert them during the bankruptcy proceedings. For these reasons, the third assignment of error is well taken and hereby sustained.
Having sustained Ms. Matthews's third assignment of error, the judgment of the trial court is affirmed in part and reversed in part. That portion of the confirmation entry determining priority and distribution of proceeds from the Sheriff's sale of real estate is affirmed in its entirety. However, the lower court's decision granting summary judgment to appellee on the remainder of the counterclaims asserted against it is reversed and those claims are remanded for further proceedings consistent with this opinion.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART AND CAUSEREMANDED FOR FURTHER PROCEEDINGS
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART AND CAUSE REMANDED FOR FURTHER PROCEEDINGS and each party is to bear their own costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the ADAMS COUNTY COMMON PLEAS COURT to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion.
Harsha, J.: Concurs in Judgment Only.
For the Court
 BY: ______________________ Earl E. Stephenson Presiding Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.
[1] The original promissory note was, apparently, lost. Appellee nevertheless submitted an affidavit attesting that this was the principal amount being financed and such figure was corroborated by the amount specified in the mortgage (a copy of which was submitted below). Ms. Matthews does not directly challenge the actual amount of money initially financed but, in her own materials, alleges that the cost of the project was only $10,000. No explanation is given for this discrepancy and, given that the initial amount of the loan is not really in issue on appeal, we will disregard it for purposes of our analysis.
[2] We would point out at this juncture that, while the principle purpose of the entry below was to determine priority to the Sheriff's sale proceeds, that ruling was being made under the procedural context of those issues raised by the parties in their earlier motions for summary judgment.
[3] The balance of the $25,000 proceeds was applied to court costs, expenses and taxes.
[4] We acknowledge that her schedules also show a $26,566.47 secured interest held by Farmers Home Administration. However, her bankruptcy petition does not set forth that this debt was secured by the property at issue in the cause sub judice. Farmers Home Administration also was not joined as a lien holder in the foreclosure proceeding below which would suggest that this debt was secured by different property. The figure is therefore disregarded for purposes of our analysis. Nevertheless, even if this debt was secured by the property sought to be foreclosed herein, we would still find no error in the trial court's application of a waiver theory.
[5] It is worth pointing out at this juncture that an unavoided mortgage lien is not affected by the discharge in bankruptcy of the underlying debt and is still subject to an in rem
foreclosure (as opposed to an in personam collection action).See generally Johnson v. Home State Bank (1991), 501 U.S. 78,83; also see Seabrook v. Garcia (1982), 7 Ohio App.3d 167,168.
[6] RISA does not apply to financial institutions engaged in lending activities. See Vannoy v. Capital Lincoln-MercurySales, Inc. (1993), 88 Ohio App.3d 138, 143; Huntington Natl.Bank v. Freeman (1989), 53 Ohio App.3d 127, 128-129; Mullen v.Fifth Third Bank (1988), 43 Ohio App.3d 69, 70.