510 P.2d 897 (1973)
AZTEC SOUND CORPORATION, Plaintiff-Appellee,
v.
WESTERN STATES LEASING COMPANY, Defendant-Appellant.
No. 71-469.
Colorado Court of Appeals, Div. I.
May 1, 1973.
Frickey, Cairns and Wylder, P. C., Earl S. Wylder, Denver, for plaintiff-appellee.
*898 A. L. Overton, Englewood, for defendant-appellant.
Selected for Official Publication.
SMITH, Judge.
The controversy in this appeal evolved from a transaction between Aztec Sound Corporation and Western States Leasing Company. Aztec sued Western to recover an alleged $2,000 overpayment on the agreement and for damages for abuse of process. Judgment was entered in favor of plaintiff for the $2,000 overpayment, for an additional $2,000 for abuse of process, and for all costs of the action.
The facts of this case are as contained in the trial court's findings of fact which are not disputed by the parties except as indicated. Defendant's agent initiated contact with plaintiff, and, subsequently, the parties entered a transaction for the "sale" of certain of plaintiff's manufacturing equipment to defendant with a related agreement wherein plaintiff was to lease the equipment from defendant for a stated period of time. The parties executed two documents, a bill of sale and a lease agreement. The lease agreement states that the equipment "is, and shall at all times remain, the property of the Lessor" and that the leasing agreement "constitutes the entire agreement between Lessor and Lessee."
Plaintiff alleged that when this lease contract was executed, it did not contain all of the terms of the agreement between the parties. The court found in plaintiff's favor on this issue and determined that plaintiff and defendant made what was actually intended to be a loan agreement. The court found that the "sale" evidenced by the bill of sale was only for purposes of securing a loan of money to plaintiff, who would pay defendant back in installments at 8% interest. The court further found that the parties agreed that at the end of the "lease" period plaintiff could buy back the equipment from defendant for one dollar.
Plaintiff made all the required payments under the lease agreement, but was not allowed to repurchase the subject equipment for one dollar. Upon termination of the lease, defendant notified plaintiff that to gain title to the property, plaintiff would have to pay defendant $493. Plaintiff refused to pay defendant this amount. Defendant then, on January 29, 1970, brought a replevin action in the Denver County Court alleging the value of the property to be $493.68. Defendant obtained a writ of replevin and entered upon plaintiff's business premises pursuant to it, but, without executing the writ, defendant abandoned the action. On February 19, 1970, defendant filed a second replevin action in the Denver Superior Court alleging the value of the property to be $2,000. Execution of the writ of replevin issued pursuant to that action was halted by a cash settlement.
Subsequently, plaintiff initiated this action alleging that, in order to prevent having all production in its manufacturing plant cease because of the removal of the subject equipment, it was forced to settle with defendant for $2,000 and to sign a document purporting to release defendant from all liability for actions connected with the leasing agreement and the replevin actions. Defendant sought to prove that the increase in the amount demanded for the subject equipment was due to increased costs, but the court found no justification for the quadrupling of the price.
Defendant initially contends that the lease agreement was an integrated contract containing the entire agreement of the parties and that the trial court erred in allowing and considering parol evidence to vary the terms of the contract from those contained in the written lease form. Where a written document is a complete and accurate expression of the agreement between the contracting parties, then evidence is not admissible for the purpose of varying or contradicting the terms of the written document. Miller v. L. C. Fulenwider, Inc., 146 Colo. 588, 362 P.2d 570. This rule does not apply where the writing does not contain all the terms and conditions of the agreement between the parties. Harmon v. Waugh, 160 Colo. 88, 414 P.2d *899 119. Whether the writing is a complete and accurate expression of the agreement, is a question of fact to be determined by the trial court. 3 A. Corbin, Contracts § 573 (1960 ed.). In the instant case, the court found that the written lease form was not an integrated contract. This factual determination is amply supported by evidence in the record, and we will not overturn it. Adler v. Adler, 167 Colo. 145, 445 P.2d 906. Therefore, it was proper for the trial court to admit and consider parol evidence to determine the terms of the actual agreement entered into by the parties.
Also a subject of controversy in this appeal is the sum awarded plaintiff on its claim for abuse of process. Although the trial court did in one instance refer to this award as exemplary damages, the findings of fact and conclusions of law of the court make it evident that the $2,000 sum awarded on this claim was compensation for damages suffered when defendants made certain trips to plaintiff's place of business ostensibly to recover the subject manufacturing equipment.
Colorado has not specifically recognized the tort of abuse of process. Where it has been recognized, establishment of a prima facie case, aside from proof of damages, requires proof of an ulterior purpose in the use of judicial proceedings and willful actions by defendant in the use of process which are not proper in the regular conduct of a proceeding. Baker v. Oklahoma Tire & Supply Co., 344 F.Supp. 780 (W.D.Ark.); Barrett v. Baylor, 457 F.2d 119 (7th Cir.); Barquis v. Merchants Collection Association, 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817; Nevada Credit Rating Bureau, Inc. v. Williams, Nev., 503 P.2d 9; Manufacturers Supply Co. v. Parker, 103 R.I. 426, 238 A. 2d 616; Holiday Magic, Inc. v. Scott, 4 Ill.App.3d 962, 282 N.E.2d 452; Williams v. Williams, 23 N.Y.2d 592, 298 N.Y.S.2d 473, 246 N.E.2d 333; Pow-Bel Construction Corp. v. Gondek, 291 Minn. 386, 192 N.W.2d 812; National Motor Club v. Noe, 475 S.W.2d 16 (Mo.); W. Prosser, Torts § 121 (4th ed.). We recognize such an action. The trial court here was supported by the evidence in finding that defendant used the replevin actions for ulterior purposes. This is evident from the essentially undisputed testimony of Mr. Jerry Nichols, president of Aztec.
Mr. Nichols testified that after the final payment was made under the agreement, defendant made demands for $493 as a price for the relinquishment of their interest in the subject equipment. Defendant thereafter obtained a writ of replevin and came upon plaintiff's business premises, accompanied by sheriff's officers, ostensibly to remove the subject equipment pursuant to the writ. At that time defendant's agent demanded $493 or possession of the equipment. When Mr. Nichols attempted to call his attorney, defendant's agent then demanded $750. As Mr. Nichols continued his call, defendant's agent raised the amount demanded to $1,000. At this time plaintiff believed that he could avert stoppage of manufacturing only by giving defendant's agent a check for $1,000. Mr. Nichols for Aztec, however, refused to sign a complete release, and defendant's agent refused the check which was then voided. A second replevin attempt on a second writ of replevin occurred approximately one month later. At this time plaintiff was served with papers and defendant's agents with the aid of sheriff's officers began removing the subject equipment from the premises stopping plaintiff's manufacturing process completely. Demand was made for $2,000 and execution of a release, and plaintiff complied after it became obvious that execution of the writ would completely halt plaintiff's business operation.
This evidence supports the trial court's finding that defendant used the replevin actions not as a means to regain the subject equipment, but as a way of forcing plaintiff to pay a sum not required by the contract between the parties and to agree to release defendant of all liability for its action. We believe that the trial court was *900 correct in its conclusion that defendant used the judicial proceedings for an ulterior purpose to plaintiff's damage. Plaintiff submitted proof of damages incurred in excess of the $2,000 awarded by the court on this claim. Hence, the award on this claim was proper and will not be disturbed.
Defendant contends that plaintiff released it from any liability arising out of the agreement or its actions relative thereto. Defendant presented as evidence the written release executed to prevent defendant's replevin of the subject property. As a general rule, the courts will not interfere between parties who contract for a release. An exception to this rule occurs where duress is involved. Siegal v. Lechler, 130 Colo. 338, 275 P.2d 949. Here the trial court found that plaintiff signed the release only as a last resort to avoid having the manufacturing equipment removed. Under these circumstances, plaintiff will not be held to the terms of such a release agreement. Wheelock Bros., Inc. v. Bankers Warehouse Co., 115 Colo. 197, 171 P.2d 405.
Judgment affirmed.
COYTE and ENOCH, JJ., concur.