Caleb Vincent SWANSON, Jr.,
Plaintiff-Appellant,

v.

Albert BIXLER; Ralph Bixler; First National Bank of Strasberg, a National Banking Association; Jerrie Rice, individually and as Chairman of the Board of Defendant Bank; Jerry L. Slagle, individually and as President of Defendant Bank; Richard Price, individually and as one of the Directors of the Defendant Bank; George A. Epperson; Donald F. McClary; Edward L. Zorn; Epperson, McClary and Zorn; Edward F. Hogan; Samuel Kumagai; and Hogan, Kumagai, Kane and Deeke, Defendants-Appellees.

No. 83–1747.

United States Court of Appeals,
Tenth Circuit.

Dec. 4, 1984.

Jack Kintzele, Denver, Colo., for plaintiff-appellant.

Bruce Anderson of Nelson & Harding, Denver, Colo., for defendant-appellee Albert Bixler.

Daniel S. Smith of Connell, Banman & Smith, Boulder, Colo., for defendant-appellee Ralph Bixler.

Gregory L. Williams of Rothgerber, Apel & Powers, Denver, Colo., for defendants-appellees First National Bank of Strasburg, Jerrie Rice, Jerry L. Slagle and Richard Price.

Eugene S. Hames of Wood, Ris & Hames, Denver, Colo., for defendants-appellees George A. Epperson, Donald F. McClary, Edward L. Zorn and Epperson, McClary and Zorn.

Robert S. Treece and Evan M. Zuckerman of Hall & Evans, Denver, Colo., for defendants-appellees Edward F. Hogan, Samuel Kumagai and Hogan, Kumagai, Kane and Deeke.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

This is a diversity case in which Caleb Vincent Swanson, Jr. (Swanson), appeals the district court's order directing that his complaint be dismissed for failure to state a claim upon which relief can be granted. We will affirm the dismissal.

Swanson is the stepson of Stanley Bixler and the natural son of Stanley's wife, Florence E. Bixler. Stanley Bixler is approximately ninety-six years of age and a millionaire; Florence E. Bixler is approximately eighty-two years of age. In the fall of 1981, Swanson left his home in California to assist his mother and stepfather, who were "ill and incapacitated and in need of help," (R.Vol. I at 7), at their home in Deer Tail, Colorado. When Swanson arrived, he discovered that his stepfather was unaware of his ability to pay for medical and other attention which he and his wife needed. *Id.*

Swanson then accompanied Stanley Bixler to the First National Bank of Strasburg (Bank), one of the appellees herein, where they learned only that Stanley had "plenty" of money. *Id.* From the First National Bank of Strasburg, Swanson and Stanley Bixler then went to meet with George Epperson, Stanley Bixler's attorney for some time, who arranged payment for medical and live-in-help expenses for the Bixlers. *Id.* at 7–8. Following the meeting with Epperson, Swanson learned that the Bank had $209,846.79 of Stanley Bixler's money in noninterest bearing accounts. *Id.* at 8.

Believing that the Bank and its principal officers were imprudently managing Stanley Bixler's financial affairs, Swanson decided to take upon himself the task of managing those affairs. *Id.* To that end, he requested that the Bank release to him Stanley Bixler's funds. *Id.* This request

was refused. *Id.* Thereafter, according to Swanson, the Bank, two of its principals, Epperson, and Epperson's law firm "conspired to set up a conservatorship against Stanley Bixler based primarily upon Stanley Bixler's advanced years and to appoint the defendant Bank conservator." *Id.* The conservatorship action was to be brought by Stanley Bixler's brother, Ralph Bixler, and his natural son by a prior marriage, Albert Bixler. *Id.* at 8–9.

On or about October 26, 1981, Ralph and Albert Bixler, by their attorneys, Epperson, McClary and Zorn, brought conservatorship proceedings pursuant to C.R.S. § 15–14–401 (1973). They also sought to enjoin Swanson from removing any of Stanley Bixler's assets or from transacting any business on Stanley Bixler's behalf. The injunction issued, but was vacated on January 20, 1982, with the creation of the conservatorship and the appointment of Swanson as guardian for Stanley Bixler.

Swanson commenced the present action on October 13, 1982, against: Albert Bixler; Ralph Bixler; the First National Bank of Strasburg; its Chairman of the Board, Jerrie Rice; its President, Jerry L. Slagle; and one of its Directors, Richard Price; the law firm of Epperson, McClary, and Zorn, and Epperson, Donald F. McClary, and Edward L. Zorn individually; Hogan, Kumagai, Kane, and Deeke, accountants for Stanley Bixler; and Edward W. Hogan individually. In his complaint, Swanson alleged: willful deprivation of Stanley Bixler's testamentary wishes; breach of fiduciary duty; abuse of process; libel and slander; false and negligent misrepresentation; outrageous conduct causing emotional distress; invasion of privacy; and civil conspiracy. All of the defendants moved to dismiss for failure to state a claim upon which relief can be granted. The district court granted each of these motions pursuant to Rule 12(b)(6), Fed.R.Civ.P. We have jurisdiction under 28 U.S.C. § 1291.

## II.

■ When a complaint and action are dismissed for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Chavez v. City of Santa Fe Housing Authority*, 606 F.2d 282 (10th Cir.1979). All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976). All reasonable inferences must be indulged in favor of the plaintiff, *Id.*, and the pleadings must be liberally construed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102 (10th Cir.1973). The district court specifically applied these standards to Swanson's claims, but concluded that "[e]ven if all of plaintiff's allegations are true, the Court can envision no set of facts, which, if further established, might support the plaintiff's claims." Order Granting Defendants' Motion to Dismiss, No. 82–F–2132, United States District Court for the District of Colorado, May 13, 1983, at 3 (hereinafter cited as "Order").

The district court disposed of two of Swanson's theories of recovery—deprivation of testamentary choice and breach of fiduciary duty—on the grounds that Swanson was not the "real party in interest" under Rule 17(a), Fed.Rule Civ.P., because, under Colorado law, he did not suffer damage to a legally protected interest. Order, at 3, 5. We will consider these two claims together.

■ In a diversity case, a federal district court must look to the substantive law of the state in which it is located to determine whether a complainant is the real party in interest. 3A Moore's Federal Practice ¶ 17.07 (1984). Whether a complainant is the real party in interest under state law is generally resolved by inquiring whether he or she has standing under state law. *See, e.g., American Nat. Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 459 (7th Cir.1982); *Dubuque Stone Products Co. v. Fred T. Gray Co.*, 356 F.2d 718, 723–24 (8th Cir.1966). In order to have standing under Colorado law, as the

district court recognized, a complainant must have suffered "injury in fact to an interest which, as a matter of law, is entitled to protection...." *Cloverleaf Kennel Club, Inc. v. Colo. Racing Com'n,* 620 P.2d 1051, 1057 (Colo.1980).

■ Swanson, the district court recognized, did not bring this action on behalf of either Stanley or Florence Bixler; he brought it on his own behalf. Order at 3. In his complaint, Swanson repeatedly alleged that the *sole* object of Stanley Bixler's affection is Florence Bixler. Thus, even assuming that Stanley Bixler was deprived of his testamentary choice, Swanson, by his own admission, was not injured by such deprivation. This reasoning also applies to his claim of breach of fiduciary duty. Swanson did not allege that a fiduciary duty to him was breached; he alleged that a fiduciary duty to his stepfather was breached. Inasmuch as he is not bringing this action on behalf of his stepfather or mother, he has no standing to allege breach of a fiduciary duty owed to them. It follows, then, as the district court concluded, that Swanson is not the "real party in interest" under Rule 17(a) with regard to either of these claims.

■ For similar reasons, the district court concluded that Swanson had no standing to allege abuse of process. The elements of abuse of process are, under Colorado law: (1) an ulterior motive in the use of judicial proceedings; (2) willful actions by a party in the use of the process which are not proper in the regular conduct of a civil action; and (3) damages proximately caused by (1) and (2). *Aztec Sound Corporation v. Western States Leasing Company,* 32 Colo.App. 248, 510 P.2d 897, 899 (1973). Swanson alleges that the petition for a temporary restraining order and the institution of conservatorship proceedings each constituted an abuse of process. We agree with the district court's conclusion, however, that Swanson has no standing to complain about the institution of these processes. At the time these processes were instituted, Swanson had not been appointed either guardian or conser-

vator for Stanley Bixler. He therefore had no right to use Stanley Bixler's assets for the benefit of either Stanley or Florence. Consequently, when conservatorship proceedings were instituted against Stanley, and when he was enjoined by the Arapahoe County District Court, he suffered no damage to a legally protected interest. Furthermore, we agree with the district court's holding that, even if Swanson could prove damages, he still could not succeed in his abuse of process claim because the injunction and conservatorship proceedings were instituted for an entirely "proper" purpose: that of protecting Stanley Bixler and his assets. *See* C.R.S. § 15–14–401(3) (1973); 15–14–408(2) (1973).

■ Swanson further alleges he was libeled and slandered as a result of false or negligent representations that he was going to abscond with Stanley Bixler's assets. The statements Swanson complains of were made during the course of the proceedings seeking a temporary restraining order and a conservatorship. As the district court recognized, "communications made in the course of judicial proceedings, even though they are made maliciously and with knowledge of their falsity, are absolutely privileged if they bear a reasonable relationship to the subject of inquiry." *MacLarty v. Whiteford,* 30 Colo.App. 378, 496 P.2d 1071, 1072 (1972). Consequently, statements that Swanson was stealing money, even if false, were absolutely privileged because they were directly related to the question whether Stanley Bixler and his assets were in need of protection. *See* C.R.S. § 15–14–401(3) (1973).

■ Swanson also alleges outrageous conduct resulting in the intentional or reckless infliction of emotional distress. The district court recognized that the Colorado Supreme Court has adopted Restatement (Second) of Torts § 46 (1965), thereby recognizing this tort. *See Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (1970). Yet the district court also recognized, as has the Colorado Supreme Court, that liability has been imposed only where the conduct was so outrageous as "to be re-

garded as atrocious, and utterly intolerable in a civilized community." *Rugg, supra,* 476 P.2d at 756, *quoting* Restatement, *supra,* comment d at 73. We agree with the district court that "[t]he acts of enjoining [Swanson] from removing any of his stepfather's assets and of petitioning for a conservatorship to protect those assets, do not constitute facts sufficient to support a claim for relief."

The district court also dismissed Swanson's claim of invasion of privacy, finding that Swanson "failed to state a claim which, in any light, would constitute an action for invasion of privacy." Order, at 4. In *Rugg, supra,* 476 P.2d at 755, the Colorado Supreme Court stated that a claim for invasion of privacy may be asserted "when *unreasonable action* ... is taken, which foreseeably will probably result in extreme mental anguish, embarrassment, humiliation or mental suffering and injury to a person of *ordinary sensibilities* ...." (Emphasis in original.) Implicit in the district court's holding was the conclusion that the conduct complained of here by Swanson was not the sort of "extreme" action which would give rise to a claim of invasion of privacy. We agree and hold that the district court did not err in finding that Swanson failed to allege facts sufficient to give rise to a claim for invasion of privacy.

Because Swanson has alleged no set of facts constituting tortious conduct, we agree with the district court's conclusion that his claim of civil conspiracy must also fail. As the district court aptly recognized, "[a] 'conspiracy' which has as its object conduct which is not tortious cannot then form the basis of a cause of action sounding in tort." Order, at 5–6.

AFFIRMED.