The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 7, 2019

## 2019COA19

## No. 17CA1257, *Parks v. Parrish* — Torts — Abuse of Process; Attorneys and Clients — Malpractice; Attorney Fees

A division of the court of appeals considers whether bringing a legal malpractice action to avoid or reduce liability for a former attorney's legal fees satisfies the improper use prong of a claim for abuse of process. The division concludes that it does not. Improper use requires the use of a proceeding to achieve an illegitimate or coercive goal that is outside the scope of the proceeding's proper purpose. Because a regular and legitimate function of a legal malpractice action is to avoid paying attorney fees, bringing a legal malpractice case and carrying it to its natural end does not constitute improper use, regardless of the motive. Accordingly, the division vacates the judgment on the attorney's abuse of process claim.

The division also considers whether an attorney seeking damages for unpaid attorney fees must call an expert witness to testify that the fees sought as damages are reasonable.  The division holds that such testimony is not required; reasonableness may be proved by testimony from the attorney who performed the services in question and other documentary evidence.

COLORADO COURT OF APPEALS                                    2019COA19

Court of Appeals No. 17CA1257
Jefferson County District Court No. 15CV31645
Honorable Randall C. Arp, Judge

James D. Parks III,

Plaintiff-Appellant,

v.

Edward Dale Parrish LLC, a Colorado limited liability company; and Edward
Dale Parrish, individually,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE J. JONES
Navarro and Casebolt*, JJ., concur

Announced February 7, 2019

Westerfield & Martin, LLC, Zachary S. Westerfield, Logan R. Martin, Denver,
Colorado, for Plaintiff-Appellant

Edward Dale Parrish, PC, Dale Parrish, Wheat Ridge, Colorado, for Defendants-
Appellees

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    Plaintiff, James D. Parks III, appeals from an unfavorable outcome in his malpractice case against his former attorney, defendant Edward Dale Parrish, and Parrish's limited liability company/law firm, Edward Dale Parrish LLC (the law firm).  He contends that the district court erred by (1) denying his motion for directed verdict (and subsequent motion for judgment notwithstanding the verdict (JNOV)) on defendants' abuse of process counterclaim; (2) dismissing his breach of fiduciary duty claim; (3) denying his motion for directed verdict on defendants' breach of contract counterclaim; and (4) awarding defendants their costs for an expert witness.  We agree with Parks' first contention, but disagree with his second, third, and fourth contentions.  Accordingly, we affirm in part and vacate in part.

## I.    Background

¶ 2    Parrish and the law firm represented Parks in two cases — a partition case and a dissolution case — against Parks' former, long-term girlfriend.[1]  Neither case was resolved to Parks' liking.  He told Parrish to appeal the award of attorney fees against him in the

---

[1] Parrish was actually Parks' second attorney.  Parks' first attorney left her firm and withdrew as Parks' counsel.

dissolution case. Parrish said, "Not unless you pay me," and after failed payment negotiations, filed a notice of attorney's lien in the partition case.

¶ 3        In response, Parks filed this case against defendants,[2] alleging that defendants provided negligent representation and breached their fiduciary duty to Parks in the partition and dissolution cases. More particularly, and as now relevant, Parks alleged that Parrish failed to present evidence that would have avoided an award of attorney fees against Parks in the dissolution case, and that Parrish entered into a stipulation in the partition case without authority. Defendants counterclaimed for breach of contract (seeking an award of fees incurred in previously representing Parks) and abuse of process (based on Parks bringing this case).

¶ 4        Parks moved for summary judgment on the abuse of process counterclaim. The district court denied the motion, concluding that "if a jury found that Defendants did not provide negligent representation, then the jury could find that Plaintiff brought this action for the sole purpose of avoiding paying his legal fees by

---

[2] Parks named several other individuals as defendants, but Parrish and the law firm are the sole remaining defendants.

attempting to coerce Defendants into either reducing the fees or accepting payment in an unacceptable form."

¶ 5     The case went to trial.  At the close of Parks' evidence, defendants moved for directed verdicts on all of Parks' claims.  At first, the district court denied the motion in toto.  But the next trial day, the court reconsidered defendants' motion as to the breach of fiduciary duty claim.  The court heard additional argument from both sides, concluded that the breach of fiduciary duty claim was duplicative of the negligence claim, and dismissed that claim.

¶ 6     Parks later moved for directed verdicts on defendants' counterclaims.  The court denied that motion.

¶ 7     The jury returned verdicts for defendants on all claims and counterclaims, awarding defendants $33,580 on the breach of contract counterclaim and $46,314 on the abuse of process counterclaim.  Defendants also moved for an award of costs for their expert witness.  The court awarded $8,000.  Parks moved for JNOV.  By rule, that motion was deemed denied when the district court didn't timely act on it.  *See* C.R.C.P. 59(j).

## II.    Discussion

### A.    Abuse of Process

¶ 8    Parks first contends that the district court erred in denying his motion for directed verdict and motion for JNOV on defendants' abuse of process counterclaim.  We agree and vacate the judgment on that counterclaim.

#### 1.    Standard of Review

¶ 9    We review de novo a district court's denials of a motion for directed verdict and a motion for JNOV.  *Int'l Network, Inc. v. Woodard*, 2017 COA 44, ¶ 8.

¶ 10    We view the evidence, and all inferences that may reasonably be drawn therefrom, in the light most favorable to the nonmoving party.  *Id.*  A court shouldn't grant either motion unless there is no evidence that could support a verdict against the moving party on the claim.  *Id.*; *accord Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 19.

#### 2.    Applicable Law and Analysis

¶ 11    Abuse of process provides a remedy for situations where litigation, though properly commenced, is misused to coerce or compel a result that couldn't normally be obtained via the ordinary

use of process.  *Active Release Techniques, LLC v. Xtomic, LLC*, 2017 COA 14, ¶ 8; *Walker v. Van Laningham,* 148 P.3d 391, 394 (Colo. App. 2006) ("The essence of the tort of abuse of process is the use of a legal proceeding primarily to accomplish a purpose that the proceeding was not designed to achieve.").[3]

¶ 12    An ulterior or even nefarious motive, alone, isn't enough to constitute an abuse of process.  To prove an abuse of process, the claimant must show

> (1) an ulterior purpose for the use of a judicial proceeding; (2) willful action in the use of that process which is not proper in the regular course of the proceedings, i.e., use of a legal proceeding in an improper manner; and (3) resulting damage.

*Mackall v. JPMorgan Chase Bank, N.A.*, 2014 COA 120, ¶ 39 (quoting *Lauren Corp. v. Century Geophysical Corp.*, 953 P.2d 200, 202 (Colo. App. 1998)).

---

[3] Abuse of process isn't synonymous with malicious prosecution. Malicious prosecution "addresses the situation where a person knowingly initiates baseless litigation." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *aff'd*, 2012 CO 50.  It also has an additional element that the prior action ended in favor of the malicious prosecution plaintiff. *Hewitt v. Rice,* 154 P.3d 408, 411, 413-14 (Colo. 2007).

¶ 13    The second element is distinct from the first. "[T]here is no liability for abuse of process if the [party's] ulterior purpose was simply incidental to the proceeding's proper purpose." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *aff'd*, 2012 CO 50. Put another way, "[i]f the action is confined to its regular and legitimate function in relation to the cause of action stated in the complaint[,] there is no abuse, even if the plaintiff had an ulterior motive in bringing the action or if he knowingly brought suit upon an unfounded claim." *Colo. Cmty. Bank v. Hoffman*, 2013 COA 146, ¶ 37 (quoting *Sterenbuch v. Goss*, 266 P.3d 428, 439 (Colo. App. 2011)); *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 121, at 898 (5th ed. 1984) (abuse of process requires a "definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process").

¶ 14    Defendants argue that Parks brought this case to coerce them "into reducing the legal fees or accepting payment in an unacceptable form." (The district court seems to have agreed that, if true, this was enough to support the counterclaim.) In support of this argument, they point to evidence presented at trial that Parks

filed the dissolution case to gain leverage in the partition case, coerced his ex-girlfriend into adding him and his children to her health insurance, and threatened defendants with suit when attempting to negotiate a lower payment.  But none of these acts is evidence of an improper *use* of the legal system in this case.  *See Active Release Techniques*, ¶ 12 (the plaintiff's "reputation for filing, or even [his] abuse of process in, other lawsuits should have no bearing on [his] alleged abuse of process here"; use of process in the case must be looked at objectively); *see also Sterenbuch*, 266 P.3d at 438-39 (court properly dismissed abuse of process counterclaim because alleging that the plaintiff had no lawful claims against the defendants and used the suit to "harass, embarrass, damage, burden and wrongfully obtain monies from defendants" didn't indicate improper use of process); *cf. Aztec Sound Corp. v. W. States Leasing Co.*, 32 Colo. App. 248, 252-53, 510 P.2d 897, 899 (1973) (party used writ of replevin not to obtain property, but to demand money not owed).[4]

---

[4] While threatening suit might indicate an ulterior motive, it doesn't indicate an improper use of the courts.  *See Active Release Techniques, LLC v. Xtomic, LLC*, 2017 COA 14, ¶ 12 (letters sent to

¶ 15    Defendants seize on the statement in *Walker* that "[t]he legal proceeding must be used in an improper manner, for example, to accomplish a coercive goal."  148 P.3d at 394.  But they take that statement out of context.  As *Walker* itself makes clear, that "coercive goal" must be one "that the proceeding was not designed to achieve."  *Id.*

¶ 16    One regular and legitimate function of a malpractice action is to contest attorney fees claimed by the attorney alleged to have committed malpractice.  *See Roberts v. Holland & Hart*, 857 P.2d 492, 498 (Colo. App. 1993).  That's exactly what defendants allege Parks is doing in this case.  But bringing a malpractice case and carrying it to its natural end to obtain a result such an action is designed to achieve doesn't constitute an improper use of process, no matter the motive.  *See Sterenbuch*, 266 P.3d at 439 ("[W]rongful use may not be inferred from the motive." (citing *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo. App. 1994))); *see also Walker*, 148 P.3d at 395 ("filing complaints

---

individuals informing them of an investigation into potential litigation didn't indicate an abuse of process because they were sent before and outside the scope of any litigation).

about barking dogs and cruelty to animals" under a county ordinance designed to address those issues isn't an abuse of process, even with an ulterior motive); *cf. Aztec Sound Corp. v. W. States Leasing Co.*, 32 Colo. App. 248, 510 P.2d 897 (1973) (leasing company commenced replevin action to repossess equipment to coerce payment under threat of removing equipment on which lessee's business relied).

¶ 17    We therefore conclude that the district court erred in reasoning that the jury could find an abuse of process if it found merely that defendants didn't provide negligent representation. Given the lack of evidence of any improper use of process, the district court should have granted Parks' motion for a directed verdict or motion for JNOV on the abuse of process counterclaim. Accordingly, we vacate the judgment on the abuse of process counterclaim and direct the district court to enter judgment for Parks thereon.[5]

_____

[5] Parks also argues that the district court's error in declining to dismiss this counterclaim taints the verdicts on the other claims. We observe that Parks didn't make this argument in the district court, as his counsel conceded at oral argument on appeal. We don't consider arguments that a party failed to make in the district

## B.    Breach of Fiduciary Duty

¶ 18    Parks next contends that the district court erred in dismissing as duplicative his breach of fiduciary duty claim relating to the partition case.  We aren't persuaded.

¶ 19    Again, we review the district court's decision regarding a motion for directed verdict de novo.  *Int'l Network*, ¶ 8.

¶ 20    A legal malpractice case may, depending on the particular allegations, be brought under different theories — breach of contract, breach of fiduciary duty, and negligence.  *Smith v. Mehaffy*, 30 P.3d 727, 733 (Colo. App. 2000).  But while professional negligence may also indicate a breach of trust, that doesn't mean that every professional negligence claim also supports a separate cause of action for breach of fiduciary duty.  *Moguls of Aspen, Inc. v. Faegre & Benson*, 956 P.2d 618, 621 (Colo. App. 1997); *see also Aller v. Law Office of Carole C. Schriefer, P.C.*, 140 P.3d 23, 27-28 (Colo. App. 2005).  Where the claims arise from the same material facts and the allegations pertain to an attorney's

---

court.  *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992).

exercise of professional judgment, the breach of fiduciary duty claim should be dismissed as duplicative. *Aller*, 140 P.3d at 27-28.

¶ 21 Parks alleged that Parrish breached his fiduciary duty by entering into the stipulation without Parks' consent. That same allegation underlies, in part, the negligence claim and implicates Parrish's exercise of professional judgment.[6] Parks doesn't seem to argue to the contrary. Rather, he argues that the nature of the duty, rather than the factual basis, controls. Under the circumstances of this case, however, that distinction isn't dispositive.

¶ 22 "Legal malpractice actions based on negligence concern violations of a standard of care, whereas legal malpractice actions based on breach of fiduciary duty concern violations of a standard of conduct." *Smith*, 30 P.3d at 733. A breach of fiduciary duty claim arises from the attorney's breach of the duties of loyalty and confidentiality. *Aller*, 140 P.3d at 27. But where the action concerns merely an attorney's exercise of professional judgment,

---

[6] Contrary to Parks' characterizations, the agreement at issue was a stipulation in the partition case that would guide a commissioner in valuing the property and determining an equitable division, not a settlement of the case.

11

the claim is one for negligence. *Id.* at 27-28. And "[w]here, as here, the operative allegations of the complaint assert violations of both standards of conduct and standards of care without making specific and particularized allegations of intentional conduct, . . . the malpractice claim is based upon negligence." *Id.* at 27.

¶ 23    Parks argues on appeal (as he did in the district court) that Parrish's breach of fiduciary duty wasn't entering into a stipulation without authority, but representing to opposing counsel that he could enter into the stipulation.[7] We don't discern any meaningful difference. Both the negligence claim and the fiduciary duty claim are based on the same material fact: Parrish entering into a stipulation. As the district court pointed out, "It's the same conduct," and any argument otherwise would be "splitting hairs."

¶ 24    Parks' reliance on *Dury v. Ireland, Stapleton, Pryor & Pascoe, P.C.*, Civ. No. 08-cv-01285-LTB-MEH, 2009 WL 2139856 (D. Colo. July 14, 2009) (unpublished order), is misplaced. In that case, the defendants represented multiple parties with differing interests,

---

[7] Parks' amended complaint, however, alleges that Parrish and the law firm breached a fiduciary duty by "[e]ntering into a stipulation that [they] did not have authority to enter into on behalf of [Parks]."

12

resulting in a conflict and a breach of the duty of loyalty that was separate and independent from any negligent handling of the actual legal work. Parks didn't allege any such conflict or improper disclosure of attorney-client information (or any other breach of loyalty, such as misuse of client funds, *see Aller*, 140 P.3d at 27-28).

¶ 25    For these reasons, we conclude that the district court didn't err.

### C.    Breach of Contract

¶ 26    Parks next contends that the district court erred in denying his motion for a directed verdict on defendants' breach of contract counterclaim. Again, we disagree.

¶ 27    Defendants claimed that Parks breached a contract by failing to pay attorney fees billed for work the law firm performed on his behalf. Because reasonableness is an implied term in all contracts for attorney fees, Parks argues that defendants had to prove the reasonableness of the fees they sought. Going a step further, he argues that expert testimony was necessary to establish the reasonableness of defendants' claimed fees, and because

defendants didn't present any such testimony, the claim necessarily fails. This last step is where his argument collapses.

¶ 28　Parks doesn't point to any case — and we haven't found any — supporting his assertion that expert witness testimony is required when breach of contract damages are unpaid attorney fees. Nor does he make any compelling argument that laypersons can't determine the reasonableness of the fees charged by an attorney without the help of an expert. *Cf. Boigegrain v. Gilbert*, 784 P.2d 849, 850 (Colo. App. 1989) (in professional negligence cases, expert testimony as to the *standard of care* is required when a breach of duty can't be understood by a layperson without the help of an expert). True, in attorney fees disputes, parties frequently offer expert testimony, but that doesn't mean that expert testimony is always required.[8]

¶ 29　At trial, Parrish testified about the services rendered, the time spent on those services, and the associated fees charged. And he spoke to the reasonableness of the time spent on specific tasks.

---

[8] We don't mean to suggest that expert testimony on reasonableness is required in certain circumstances or is never required. These issues remain for another day.

The jury also considered defendants' bills to Parks. The jury therefore had sufficient evidence from which to assess the reasonableness of the claimed fees. *See In re Marriage of Pollock*, 881 P.2d 470, 472 (Colo. App. 1994) (additional expert testimony on reasonableness wasn't required where testimony of client and attorney supported the award).[9]

### D.    Costs

¶ 30    Lastly, Parks contends that the district court erred in awarding costs for an expert witness to defendants. He argues these costs were considered by the jury as part of the damages for defendants' counterclaims, and therefore the court awarded duplicative costs.

¶ 31    In the district court, however, Parks didn't object to the costs on this basis. Therefore, the issue isn't preserved and we don't need to consider it. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992).

---

[9] And though defendants asked for $43,000, the jury awarded them only $33,580 for breach of contract, indicating that the jury gave thought to what amount would be reasonable.

¶ 32 Nor do we see any need to vacate the costs award because of our decision to vacate the judgment on the abuse of process counterclaim. Though that decision means defendants haven't prevailed on every issue, they clearly remain, on balance, the "prevailing party." And the costs in question were for defendants' expert, who testified concerning defendants' compliance with the standard of care; these costs don't relate to the abuse of process counterclaim.

## E. Appellate Attorney Fees

¶ 33 Defendants ask for an award of their appellate attorney fees, arguing that Parks' appeal is substantially groundless and that Parks appealed only to delay or increase defendants' expenses. We disagree with their assertions and so decline the request.

## III. Conclusion

¶ 34 We vacate the judgment in favor of defendants on the abuse of process counterclaim, but affirm the judgment in all other respects. We remand the case to the district court to enter judgment in Parks' favor on the abuse of process counterclaim, and to amend the judgment as to damages accordingly.

JUDGE NAVARRO and JUDGE CASEBOLT concur.

16